| | |
|---|---|
| WENDY BLADES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>J&S PROFESSIONAL PHARMACY, INC.<br>and JOYCE FOGLEMAN,<br><br>　　　　Defendants. | Case No. 3:18-cv-01369-JPG-SCW |

## MEMORANDUM AND ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

Plaintiff Wendy Blades used to work for defendant J&S Professional Pharmacy—of which defendant Joyce Fogleman was the president, pharmacist, and sole owner. Blades has now sued Fogleman and the Pharmacy under several federal and state theories because of alleged sexual harassment that she endured while she was an employee. Fogleman and the Pharmacy then moved to dismiss the case, and for the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** that motion. (ECF No. 12.)

## I.　　BACKGROUND

At first glance, J&S Professional Pharmacy appears to be your typical pharmacy—until you see the allegations that Wendy Blades and other employees who worked there (1) had to line up and kiss Joyce Fogleman—the owner—on the mouth as a prerequisite to receive their paychecks; (2) received spankings from Fogleman as a form of discipline and sexual gratification; (3) observed displays of nudity by Fogleman; and more. (Compl. ¶ 18, ECF No. 1.) Blades worked at the Pharmacy for over a decade, and over time, she reportedly developed high blood pressure, severe anxiety, and depression from Fogleman's antics. (*Id.* at 20.) One day in March 2017, Blades even had to seek urgent medical treatment because of these issues—and her

doctor told her that she had a spike in her blood pressure and needed to "go home and rest." (*Id.* at 21.) But when Blades returned to work four days later, the Pharmacy terminated her employment—allegedly because of her medical inability to work. (*Id.* at 23, 112.)

Blades then began the trek to this Court through 42 U.S.C. § 2000e-5's jungles: she filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission (EEOC), waited for the EEOC to process everything and issue her a "right to sue" letter, and then sued the defendants in this Court on ten counts. Two of them are here on federal-question jurisdiction pursuant to 28 U.S.C. § 1331: (1) a violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e)-3, *et seq.*) for an "unlawful sexual harassment and a sexually hostile work environment"; and (2) a violation of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, *et seq.*) for unlawful termination because of one or more of her medical disabilities. The other eight are state-law claims here on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a): battery, intentional infliction of emotional distress, intrusion upon seclusion, and Illinois Human Rights Act violations against Fogleman and the Pharmacy. The defendants have now moved to dismiss every state-law claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12.)

## II.     LEGAL STANDARDS

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is

and the grounds upon which it rests; and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. ANALYSIS

### A. The Illinois Human Rights Act

This first issue is the most complicated one: whether Blades exhausted her administrative remedies under the Illinois Human Rights Act ("the Act") before filing suit. Counts II and III of the complaint allege violations of the Act—specifically, that the defendants were responsible for sexual harassment and creating a hostile work environment—but the Act requires an individual to exhaust her administrative remedies before suing. 775 ILCS 5/7A-102; 775 ILCS 5/8-11. A plaintiff can do this in two ways: (1) timely filing a charge with the Illinois Department of Human Rights, 775 ILCS 5/7A-102(A); or (2) timely filing a charge with the EEOC. 775 ILCS 5/7A-102(A-1).

The problem in this case is *when* an individual must file their charge in order for it to be timely. Blades filed hers with the EEOC 197 days after her employment with the Pharmacy ended. But the statute says:

> [a] charge under this section shall be filed within [180] days after the alleged unlawful employment practice occurred…except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency…such charge shall be filed by

or on behalf of the person aggrieved within [300] days after the alleged unlawful employment practice occurred * * *.

42 U.S.C. § 2000e–5(e)(1). The defendants accordingly say that Blades was late because she first filed her charge with the EEOC instead of the state or local agency—meaning that she is subject to the 180-day period in the first part of the statute. Blades, on the other hand, argues that she is subject to the 300-day period: Blades says that the Illinois worksharing agreement with the EEOC, as well as established caselaw, demonstrate that a person can "institute proceedings" with the state agency even if they first-file with the EEOC after the state's own internal deadlines.

Blades is correct. First, the United States Supreme Court held decades ago that if you first file a charge of discrimination with the EEOC, and the EEOC then refers that charge to the state agency pursuant to worksharing agreement with the state—which Illinois and the EEOC have—then that properly "institutes proceedings" for the purposes of 42 U.S.C. § 2000e–5(e)(1). *Love v. Pullman Co.*, 404 U.S. 522, 525 (1972). Blades fulfilled her obligations here: her charge of discrimination with the EEOC properly identifies the Illinois Department of Human Rights as an interested state agency, so that the EEOC could refer it over to Illinois pursuant to their worksharing agreement with the state. (ECF No. 12-1.) And second, the Supreme Court also held decades ago that even if you file this charge with the EEOC *after* the state's 180-day deadline, your charge is timely in regards to both the federal and state claims contained therein so long as you file it within 300 days. *E.E.O.C. v. Commercial Office Prod. Co.*, 486 U.S. 107, 125 (1988). The individual in *Commercial Office* filed their charge with the EEOC 290 days after the alleged incident, and the Supreme Court explained:

> The importation of state limitations periods into § 706(e) [of Title VII] not only would confuse lay complainants, but also would embroil the EEOC in complicated issues of state law. In order for the EEOC to determine the timeliness of a charge filed with it between 180 and 300 days, it first would have to determine whether the charge had been timely filed under state law, because the

answer to the latter question would establish which of the two federal limitations periods should apply. This state-law determination is not a simple matter.

*Commercial Office Prod. Co.*, 486 U.S. at 124.

And the Seventh Circuit has since held steadfast to the holding in *Commercial Office*: in *Marlowe v. Bottarelli*, 938 F.2d 807, 809 (7th Cir. 1991), the Circuit explained that the worksshare agreement between the EEOC and Illinois constitutes a "state waiver of complaints untimely under state law and delegate[s] initial jurisdiction over such complaints to the [EEOC]." 938 F.2d at 112. The plaintiff in Marlow filed their charge with the EEOC 299 days after the alleged incident, and even then, the Seventh Circuit held that once the charge "was filed with the EEOC, the [worksharing] agreement worked instantaneous constructive termination of the state's jurisdiction over her charges"—including the state's 180-day limitations period. *Id.* at 814 (internal citation and quotation marks omitted). And one of this Court's sister districts reached the same conclusion in a nearly-identical case, relying on the above-mentioned cases as well as a "a veritable avalanche of cases in which courts have stated that the relevant time period for filling an EEOC charge in Illinois is 300 days, often not even mentioning any separate IDHR filing requirement." *Gul-E-Rana Mirza v. The Neiman Marcus Grp., Inc.*, 649 F. Supp. 2d 837, 851–52 (N.D. Ill. 2009) (internal citations omitted). The Court will do the same here and hold that Blades's complaint was timely for the purposes of the Illinois Human Rights Act claims.

### B.    Battery

The Pharmacy and Fogleman next move to dismiss the battery claims against them. First, they argue that the Illinois Human Rights Act pre-empts the battery claims: the Act says that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). The Act defines sexual harassment—the basis for the battery claim here—as a civil

rights violation. 775 ILCS 5/2-102(D). So the defendants accordingly claim that this Court has no jurisdiction under the plain text of the Act, and that Blades must instead follow the administrative procedures in the Act in order to obtain a remedy.

The defendants defeated themselves here: they correctly identify that "the key to preemption is not whether the facts that support a common law tort claim (like intentional infliction of emotional distress) would also support a claim under the Human Rights Act, but rather whether the plaintiff can prove the elements of the tort 'independent of any legal duties created by the Illinois Human Rights Act.'" *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017) (quoting *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 227 Ill.Dec. 98, 687 N.E.2d 21, 24 (1997)). In plain language, this means that a plaintiff cannot bring a tort claim—like negligence—against a defendant if the basis for that tort is that the defendant had a duty not to violate the Illinois Human Rights Act. But here, the battery claims are predicated on intentional and unwanted touchings—spankings, kissing, and the like—that meet the plain definition of battery "independent of any legal duties created by the Illinois Human Rights Act." *Id*. And the Illinois Supreme Court has already held this exact same thing: *Maksimovic*—which the Seventh Circuit in *Richards* relied on substantially—expressly stated that the Act does not pre-empt battery claims stemming from a sexual assault. 177 Ill. 2d 511, 517, 687 N.E.2d 21, 23.

The Pharmacy's and Fogleman's other argument on the battery front is more constrained: the Pharmacy says that it cannot be liable for Fogleman's battery under a theory of *respondeat superior* because the battery was not within the scope of Fogleman's employment. The elephant-in-the-room for the Pharmacy, however, is that Fogleman is the "President, Pharmacist[,] and principal or sole owner of J&S Pharmacy." (Compl. ¶ 11, ECF No. 1.) It is well-established under Illinois law that an "employer's vicarious liability extends to the negligent, willful,

malicious, or even criminal acts of its employees when such acts are committed within the scope of the employment." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163–64, 862 N.E.2d 985, 991 (2007) (internal citations omitted). And an employee's "scope of employment" is (1) conduct of the kind she is employed to perform; (2) that occurs substantially within the authorized time and space limits; and (3) is intended to serve the [employer]. *Id.* (citing Restatement (Second) of Agency § 228 (1958); *Pyne v. Witmer*, 129 Ill.2d 351, 360, 135 Ill.Dec. 557, 543 N.E.2d 1304 (1989)).

This case is a hornbook example of vicarious liability and the principal/agent relationship in the employment context. Joyce Fogleman is the president, sole owner, and pharmacist at J&S Pharmacy. And allegedly, Fogleman required employees to kiss her on the mouth before receiving their paychecks, spanked them as a form of discipline, and more. (Compl. ¶ 18, ECF No. 1.) It is a business owner's obligation to pay (and sometimes discipline) her employees. And if a business owner is administering her payment and disciplinary schemes—essential functions of her business—through the means of an intentional battery, then that is a prime example of when the business itself is liable vicariously. *See, e.g., Lion Oil Co. v. Sinclair Ref. Co.,* 252 Ill. App. 92, 101 (Ill. App. Ct. 1929) ("a principal is civilly liable to third persons where his agent, while acting within the scope of his real or apparent authority, is guilty of assault and battery, conversion, fraud, or trespass[.]") And none of the Pharmacy's cited cases—which deal with things like Mississippi law, *Franklin v. Turner*, 220 So. 3d 1003, 1006 (Miss. Ct. App. 2016), or inappropriate escapades like attempting to seduce a married secretary while on a business trip, *Hargan v. Sw. Elec. Co-op., Inc.*, 311 Ill. App. 3d 1029, 1030, 725 N.E.2d 807, 808 (2000), or any of the others—compel a different conclusion. Both battery claims will stand at this stage.

C.      **Intrusion Upon Seclusion**

Fogleman and the Pharmacy next argue that the complaint fails to state a claim for common-law intrusion upon seclusion. That argument is correct. The elements for intrusion upon seclusion are: "(1) an unauthorized intrusion or prying into the plaintiff's seclusion, (2) the intrusion must be offensive or objectionable to a reasonable man, (3) the matter upon which the intrusion occurs must be private, and (4) the intrusion causes anguish and suffering." *Burns v. Masterbrand Cabinets*, Inc., 369 Ill. App. 3d 1006, 1012, 874 N.E.2d 72, 77 (2007) (citing W. Prosser, Torts § 112, at 832–34 (3d ed.1964)) (further internal citations omitted); *see also Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, ¶ 33, 983 N.E.2d 414, 424 (2012) (officially recognizing the tort in Illinois). To further flesh out this tort, Fogleman and the Pharmacy point to the Restatement (Second) of Torts, which explains:

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.

Restatement (Second) of Torts, § 652B cmt. B.

The problem for Blades is that her intrusion upon seclusion claim is predicated on the alleged sexual batteries: kissing, spanking, and the like. While those allegations certainly suffice to state a claim for battery, they do not meet the definition of intrusion upon seclusion—which, as the Restatement explains, is reserved for things like placing a camera in somebody's bedroom, wiretapping their phone, or in some other manner "prying" into their private affairs. Blades tries to combat this by pointing to two cases from other circuits—neither of which deal with Illinois

law—and neither case is persuasive. One of them deals with strip and squat searches in front of other people in public, which is not at issue here. *Helton v. United States*, 191 F. Supp. 2d 179, 182 (D.D.C. 2002). The other is an unpublished case from the District of Minnesota in the Eighth Circuit—not the Seventh Circuit, as Blades suggests—which allowed an intrusion upon seclusion claim to proceed past summary judgment when the claim was predicated on someone shoving a knee into another person's groin during a sexual assault. *Birth v. Myles*, No. CIV. 09-3386 DWF JSM, 2010 WL 5067488, at \*7 (D. Minn. Dec. 6, 2010). But that case contains virtually no analysis on the issue, and its non-precedential value holds zero weight in this Court regardless. The Court must dismiss the intrusion upon seclusion counts—IV and V—for failure to state a claim.

### D.      Intentional Infliction of Emotional Distress

To conclude, Fogleman and the Pharmacy argue that the intentional infliction of emotional distress claims are pre-empted by the Illinois Human Rights Act for the same reasons as the battery claims. And this argument fails for the same reasons as the battery claims: a person can plead a claim for intentional infliction of emotional distress—extreme and outrageous conduct with the intent to inflict severe emotional distress, and which actually did result in emotional distress—without referring to an independent duty in the Illinois Human Rights Act. *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017). *Richards* addressed this very question in the intentional infliction of emotional distress context, and the Court follows it here. These last claims must proceed.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the defendants' motion to dismiss. (ECF No. 12.) The Court **DISMISSES WITH PREJUDICE** the

intrusion upon seclusion claims: Counts IV and V of the complaint. All remaining claims will proceed.

**IT IS SO ORDERED.**

**DATED:  DECEMBER 6, 2018**

**s/ *J. Phil Gilbert***
**J. PHIL GILBERT**
**U.S. DISTRICT JUDGE**
